SARAH E. HANNA'S ADM'R *v.* JELSON M. HANNA'S ADM'R.

**Infants—Parties to Action—Guardian Ad Litem—Administrator.**
Where defendants to a cross-petition to sell real estate are infants, and no guardian ad litem is appointed for them, a judgment for cross-petitioner ordering the sale of the infants' real estate is erroneous and will be reversed.

**Administrator.**
An administrator or other trustee when called upon by a pleading to show receipts and disbursements of his trust, should, by a court of equity, be compelled to respond before being permitted to proceed with his cause.

APPEAL FROM SCOTT CIRCUIT COURT.

October 15, 1874.

OPINION BY JUDGE COFER:

The children of Jelson M. Hanna were all infants when appellee filed his answer and cross-petition against them, seeking to foreclose his mortgage on the land, and also to sell the land to pay any balance that might be due to him on a final adjustment of the accounts between the parties; and no guardian *ad litem* having been appointed to defend for them in respect to the matters set up in the cross-petition, the judgment rendered to sell the land was, for that reason, erroneous.

It is distinctly charged in the amended petition filed by appellants, that appellee had taken charge of and sold the personal property

mentioned in the mortgage, and that the proceeds thereof were more than sufficient to pay the mortgage debts. This is not denied in terms or in substance; and on the pleadings, as they stood at the trial, the court should have rendered judgment canceling the mortgage, and declaring the debts secured by it to have been paid.

The appellee was called on to state what property he had sold, and what disposition he had made of the proceeds; to this he made no response whatever. He was the agent of his intestate in selling the personal property mortgaged to him and others, and it was his duty to keep an account, and when called on to state what property he had sold and how much he sold it for, and what disposition he made of the proceeds, he should have made a full exhibit, and ought not to have been allowed to proceed on his cross-petition until he did so. He had no right to seal his own lips, and then insist that he should only be charged with whatever could be proved against him by the widow and minor children of his deceased principal. He occupied a position of trust and confidence, both on account of his former agency and of his office of administrator; and his adversaries had a right to demand a full disclosure. He knew the facts they did not, and the chancellor will not allow him to drive them to the proof of facts which he knows and is bound to disclose.

Interest should have been charged on the amount of all sales of property made by appellee during the life of Hanna, from the date of the sale. This was not done. The whole price of the mare and colt sold for $300 should have been charged with interest from the date of sale, and no deduction should have been made of the $85 paid to John Hanna for keeping them. That was paid by a credit on a debt John Hanna owed to the intestate, and which is not charged to appellee.

Appellee is credited by the account of H. J. Stakely, which he paid with notes of his intestate against Stokely, with which he is not charged. He should have been charged with both notes. The evidence in regard to the amount of corn, and the number of hogs sold by appellee, does not satisfy us that he should have been charged with anything more than he was charged with on this account; but as the cause must be remanded for further proceedings, we refer to the subject only to say that it is not to be considered as concluded by this.

The amended petition of appellant charged with reference to the whiskey transaction, that appellee had in his possession all the notes, receipts, invoices, bills of lading, and policies of insurance relating

to the purchase, shipment and sales; and he is called upon to exhibit them, and to make a full statement of the amount of whiskey shipped to Texas, to whom and where it was shipped, to whom it was sold, at what price, how much money was paid on the same, by and to whom, and at what time, whether any money is yet due, and from whom, and what steps, if any, have been taken to collect it, to exhibit the partnership books, if any, and also to exhibit all papers of any kind, including letters and correspondence, touching the said partnership and its business.

In response to this amended petition appellee says he went to Texas and ascertained the names of each of the eleven persons with whom Hanna had left parts of the whiskey for sale, and that he called upon them for a full statement of their agency, and fails to suggest that he failed to obtain from any one of them the information he sought. He then proceeds to name six of the eleven agents, and to state how much whiskey was left with each, and that he received no money from three of them, to wit: Rust, Moss and Woodall; but as to the others he does not state whether they paid him any money or not. The remaining five agents are not named, nor is any reference made to them, except that the payments made by them had been fully stated in his original answer. All that is said on this subject in the original answer is, that he had collected the sum of $5,000 without saying of whom, or whether those who paid it, or any of them, were owing anything more or not. He says he sent an agent to Texas to look after the matter, but what the agent did, besides bringing back to Kentucky twenty barrels of whiskey at a cost of $460, he does not say. It may be that the agent made collections, or sold whiskey and received the price, and still all that is in the answer of appellee may be true.

Knowing the names of the agents, and how much whiskey each had received, and how much money each had paid to him, appellee should have stated these facts in response to the demand of the appellant, and the chancellor should have refused to attempt a settlement with him of the partnership accounts until it was done. Withholding the names of those from whom he made collections put it out of power of appellants to show that he had failed to account for all he received; the parties were not, therefore, upon equal terms, but the trustee, by withholding information in relation to the trust which he confessedly possessed, and which he was asked to communicate, was in no condition to demand relief; and the chancellor

might well have refused him any relief until he had made the required disclosure, and ought to have done so.

The appellee says all the contracts with the agents of the firm were to pay for the whiskey in gold, and as he does not disclose what kind of money he received, it ought to be assumed that the $5,000 admitted to have been collected was in gold, and he should have been charged with the premium on it, unless he paid it to McGibbon on the firm note at par. The uncollected balances due from agents in Texas belong not to appellee, but to the firm, and he should have made full disclosure, that the representatives of Hanna might have the means of charging him in the event that any part of such balances may be collected hereafter.

The judgment in favor of appellee and directing a sale of the land of his intestate to pay the balance therein ascertained, is *reversed,* and the cause remanded with directions to appoint a guardian *ad litem* for the infant defendants to. the cross-petition, and to allow the appellee to make response to the demands for a disclosure contained in the amended petition of appellant, if he offers to do so in a reasonable time, and then to allow reasonable time for further preparation, and in case he declines to make the disclosures to dismiss his cross-petition, and to render judgment against him for the balance in his hands as administrator.

*J. T. Robinson, for appellant.*
*Buckner & Prewitt, for appellee.*